310-0127 John Doe 1 and all, appellant by Matthew Ports v. David Henry and Kathleen Henry, appellees by Michael Reeces and Gary Beaton Mr. Ports, you may proceed. From July to December in the year 2000, David Henry, one of the appellees in this case, admittedly and repeatedly sexually assaulted, molested, and raped the four minors before the court today. Because of David Henry's repeated admissions and because of the unopposed expert evidence in this case, the appellants ask that the two orders at issue in this case be reversed and that the order of contempt and fine be vacated. In July 2000, at the time this set of circumstances began, the minors who were violated were four and five years old. David Henry, the appellee, was 11 years old. By chance, tomorrow is the 10-year anniversary of the day that the facts surrounding this case first began coming to light. On December 2nd of the year 2000, David Henry was arrested and taken to the police department At that time and place, he admitted to the police that he did, in fact, sexually molest the four minors in this case and the admissions continue over the many years of this case. At that time, he also signed and authored confessions with the police department that he molested and assaulted these children. At the criminal trial, he pled guilty in open court and on the record. He was then sent to a juvenile sex facility. During his three-year stay there, his counselor, Ryan Weidenbender, whose deposition is attached to this record, he told and admitted to Mr. Weidenbender on a regular basis that he did, in fact, do these terrible acts to these four kids, among others. Also as part of his stay at the Onaga facility, he authored sex assault check-in sheets in which he detailed times, places, events, number of occurrences, etc. about his interactions and inappropriate sexual conduct with these four kids. He gave a deposition on January 12th of 2005 at which time he admitted to molesting each of these four kids, quote, hundreds of times and for his own sexual gratification. Over the many years, what is clear is that David Henry has never denied assaulting these four children. In 2001, the mothers of these kids filed suit against David Henry for the inappropriate sexual contact and against his mother, Kathy Henry, for negligent supervision based on warnings she got from his counselor telling her that he should be kept away from younger children due to multiple credible accusations regarding other children with this kind of contact. Over the next eight years, every person who had contact with the four does, who discussed with the four does exactly what happened in this case, were either deposed or made available for deposition, including the police officers, the DCFS investigators, the mental health care providers of all these children, and indeed the mothers of these children have been deposed. There have been no impediments to discovery to the defendants in any way in this case. Eight years after filing suit in last October of 2009, the defendants filed a motion to compel the depositions of these four children. Obviously, we opposed that motion with expert evidence stating that these depositions would dramatically harm and psychologically harm these kids. Despite the unopposed evidence, the motion to compel was granted, the plaintiff's motion to reconsider was subsequently denied, and the plaintiffs and myself took respectful contempt from Judge Manuti in order to allow the appellate court to decide this unusual and important issue. Illinois law protects these children in two separate but very distinct ways. Supreme Court Rule 201 oversees discovery for all cases in Illinois. 201A allows parties to take depositions, including of parties. Rule 201C allows for limitations to those depositions or other exclusions regarding that kind of discovery. 201 governs this case. Under 201C, there is a balancing test that should be struck between the need for the information, i.e. the need for the defendants to take these children's deposition versus the harm or potential harm to the witness or the party who is getting this information, in this case, the four minor kids, and the psychological harm that's been opined they would sustain if forced to sit through this type of questioning. It is the plaintiff's respectful position, or the appellant's respectful position, that the appellees have not established an actual need for these depositions, but the ones that they have mentioned in their response brief include whether the sexual assaults happened or not. We believe that that issue was waived when David Henry admitted to doing so, especially when he admitted to it under oath with counsel present on January 12th of 2005. Number two, they've... Is that law supporting a waiver of that nature? Well, I believe admission law is that waiver. Admission law prevents a party from, once they've stated a concrete fact within their knowledge, from attempting to withdraw it, recant it, or trying to prove it differently through other witnesses. And we cited a great... The vast majority of that law is in our reply brief, and there is an extensive amount of it. Once a fact is taken off the table by a party with their own knowledge of a concrete fact and unequivocally, then they may not... That issue is now off the table, and they may not try to establish otherwise using other witnesses in any way whatsoever. The Illinois courts have stated that to allow... And this happened on multiple occasions where someone said something during their deposition and at trial tried to say something else. It was not allowed because it... After additional information was learned in that interim, the appellate courts have decided that allowing them to undo their admissions does nothing more than encourage perjury. And I think that's what the encouragement is here. Perhaps if they see an opening to these admissions in their attempt to undo these admissions in his deposition, they're obviously going to try to do that, but I don't think the law allows them to do that. They also asked to talk about... Their need included a number of occurrences. He went into extreme... Well, you're talking about a waiver, though, of pursuing other aspects of the case, aren't you? Oh. You're waiving the... They waived the right to examine your clients. Isn't the way that's... The way you're referring to waivers. I am. And that's not in those cases, is it? No. Not exactly, Judge. I see how that's the question. We're not talking about admissions. We're talking about... You're suggesting because there are admissions, there's a waiver of the right then to examine the victims. The victims on those issues specifically. And there was no case saying that, is there? Well, the admissions law says that that area is foreclosed once that admission is done. So that would be our position, that once he has admitted that all over the place for in a matter of five years, he cannot now attempt to prove otherwise through the children or through any other witness. Are there other things you may choose to... Or the parties may choose to prove or disprove other than the events? I understand. And if, as I mentioned in my opening brief, if there were a differently crafted motion to compel, perhaps this would have gone differently. But this was for issues on... For the deposition of these kids on all issues, including the details which were especially concerning to the healthcare professionals who gave their unopposed opinions in this case. Like I said, if there had been a differently crafted order or a differently crafted request, we might be in a different state right now. But right now we have orders that allow depositions on all issues in every detail, in every way. I think those orders are respectfully incorrect and in opposition to Illinois law, both this Didn't you put all of this in issue when you filed your lawsuit? I did not believe that... Well, to some extent, 201 generally allows depositions of parties. I agree with that. However, 2601... On anything that's relevant. I understand that relevance is the issue for most... Indeed. I don't disagree with that. The issue that I believe that 2601 and the balancing test under 201C allows for an exception to the rule of unfettered access to the other party. And 2601 is specific to minors who have been sexually assaulted by offenders. The unopposed opinion evidence in this case comes from Dr. Dominguez, a PhD in clinical psychology and an expertise in specialized trauma training. She is an assistant director at La Vida. And with Ms. Kathleen Shea, who was a licensed counselor who treated John Doe No. 2, but also answered questions on the issue of whether or not she believed it would be appropriate to depose the kids in the manner proposed. All of this was unopposed. Both health care providers said absolutely not. Much like the Steckley case, which is the Illinois Supreme Court case, there was an expert with unopposed evidence. And that expert says that the depositions would be unnecessarily psychologically overwhelming and re-traumatizing. And she also stated that each child will experience various forms of shame, anxiety, distress, fear, intimidation, and embarrassment in this adversarial setting. What was especially concerning to her was this adversarial setting, that the questioner would not be, was not trained to properly care for someone who had been traumatized in this way. And certainly they don't have an obligation to be, if they're representing their clients and doing so vigorously. Ms. Shea agreed, stating that forcing these kids to be deposed was, quote, the worst idea she had ever heard in her life. The trial court conceded, in fact, conceded that subjecting the children to these depositions would be harmful. And despite this unopposed expert evidence of that concession, the trial court ruled against the children and would believe that that was an abuse of discretion. The second way in which Illinois protects... What evidence would you allow the other side to put on? Pardon me? What evidence are you suggesting they can put on the other side? Well, there have been depositions of the mothers as to how the kids are doing. There's depositions of their therapists, counselors, and other mental health care professionals who have talked about their treatment, how they've been, how they've been doing. Certainly there will be experts for both sides who have opinions, in which there may be interviews by both. Opinions regarding what? How they've responded to these events and the likelihood of their outcome over the years. Psychological harms are things that are nonspecific to people, and everyone deals with them separately. In this specific case, one of the four children is having an extremely difficult time, including suicidal ideations, issues where he's been hospitalized in the last couple of years. And we're certainly not saying... Well, what we're certainly saying is those conditions and those issues were at least in part approximately caused by the issues that happened in this case. I think their ability to cross-examine the mothers and all these other people who have contact is more than enough. Well, other things happen in the children's lives. You can't go into that. Without talking to the children, I guess. How old are they right now? How old are they right now? I believe they are 15 and 16. There are three who I think are 15 and one who I believe is 16. How old are three of the children? Thank you. Under 2601, this was a law specifically addressed and invited by the Illinois Supreme Court and People v. Johnson regarding addressing the unwillingness of minor victims to provide testimony. It was enacted and specifically enabled civil and criminal prosecution of sexual offenders of children without the need to involve the minor victims in the lawsuit as long as certain safeguards could be met. In this case, no such legal analysis was done. No hearing was done on unavailability. We believe that was an abuse of discretion. These statutes recognize the seriousness of the harm that the children sustain. They recognize the seriousness of the harm that the children could sustain further if forced to interact with the legal process. And they recognize that sexual assault offenders should not benefit from their own wrongdoing when the shame and embarrassment and psychological harm of being put through the legal process prevents the victims from giving testimony. The Stekler case, the Roka case, show that the unavailability was a substantial issue and that Illinois courts take the unwillingness of kids who don't want to testify who are sex assault victims very, very seriously. Failing to do such an analysis and for bypassing this process, we believe, was an abuse of discretion. And we're asking to reverse the two trial court orders that were at issue and to vacate the contempt file. Has 2601 ever been used as a limitation on discovery before? I don't believe I found a case that talked about that. And the reason I think it's obvious is that the majority of this use were in criminal cases and in family law cases in which discovery was not an issue. These were simply going straight to trial. But I believe it would not make sense that the Illinois legislature would enact this law to not subject it to trial but then subject it to the same sort of detail during discovery. The criminal statute and the civil statute are identical and were enacted identically with the same reasoning. Mr. Quartz, I understand your position that the defendant can't go back on something that he has previously admitted, but my recollection is that one of the mothers testified, I think it was Jane Doe's mother, that she said that she had never been touched by him and that one of the John Doe's said that the only way that he had been touched was not with hands but with a stick. Is that not something that goes to the measure of damages in a case like this? I don't believe that it does. I believe it goes to liability and I believe that they have as much right through the admissions law as plaintiffs do. But I think the purpose of 2601 was to exclude these minors from these situations. If they have properly corroborated evidence from conversations that were had by these kids with others, they are more than welcome to introduce that at trial and they're not restricted from doing so. However, they can't try to undo what David Henry has done, which has made it quite clear. And he has never denied that he did these things. I think the context of the ages of the kids is quite important. But by the same token, I understand the limitations that would be on me as a trial attorney but what would be allowed for the defense attorney on trials. Thank you. You may proceed. Good afternoon. I'm a police report counsel. My name is Mike Reissus and I'm here today on behalf of Defendant Appellee Kathy Henry. I will address the legal basis for the trial court's rulings compelling the deposition of the minor plaintiffs beginning with Jane Doe No. 2. I will speak for about 12 minutes. Gary Eaton, who represents David Henry, will address any questions that the panel might have concerning the deposition itself as he will be the one taking the deposition. The trial court had the discretion to order the deposition of minor plaintiff Jane Doe No. 2. She is 15 years old today. She is clearly competent to testify. The trial court approached the taking of the depositions with sensitivity, ordering the first one to proceed and stating on the record that he would make himself available to address any issues that might arise during the deposition if that was necessary. Because plaintiffs did not show a clear abuse of discretion in ordering the depositions, we ask you to affirm the orders compelling the depositions to proceed. The circumstances surrounding the alleged molestations and the minor plaintiffs' damages are highly relevant to this case. All we heard about from counsel today was David Henry, David Henry, David Henry. I represent Kathy Henry. Kathy Henry has made no admissions in this case. Kathy Henry has not admitted liability in this case. She is sued for negligent supervision and only for negligent supervision. She is liable if at all, only if plaintiff shows that she knew of the need to control David and she had the opportunity to control him. She certainly has every reason to conduct discovery to determine from the children whether and how many times the minor plaintiffs were molested, when and where the molestations took place, who might have been present because some of the abuse allegedly took place in a tree house on the property. This is an apartment complex. Some of it allegedly took place in David's bedroom in their apartment when Kathy Henry may or may not have been present. She's entitled to discovery to find out what the children remember as far as the nature of the contact, how many times it took place and what physical and emotional effects they might have experienced as a result. Again, when plaintiffs say there's no need to take any deposition because David Henry admitted everything, but I think as Justice McDade pointed out, we've had some conflicting accounts take place in this case. In the police statement taken, as counsel reminded us, almost ten years ago, December 2, 2000, Jane Doe's mother, Jane Doe, number two's mother, reported that David had contact with her daughter, who was five years old, about two times, two times, in his bedroom closet. Now, David made statements at the same time, and he wrote out statements that said that the number of occurrences might have been two to four times or two to five times. And later, at Onaga, where he was undergoing treatment, he said that there were more instances, and still later yet, when he was deposed in this case, he said that it took place hundreds of times. But as Justice McDade pointed out to counsel, Jane Doe, number two, her mother testified in her deposition that her daughter denied that David had ever touched her. And instead, her daughter told her that David had exposed himself and that she had witnessed an incident involving David and another child. According to a DCFS investigator, John Doe, number one, said that David touched him only with a stick. John Doe, number three, told the investigator that David had grabbed him by the throat once, what she considered to be a physical assault, not a sexual assault. Given that we have different accounts as to the nature and number of contacts, and whether with respect to Jane Doe, number two, and John Doe, number three, whether there was any contact, the testimony of the minor plaintiffs is at the heart of this case. Putting aside liability, certainly the depositions are relevant and necessarily issue damages. If the minor plaintiffs are claiming serious and permanent psychological injuries, we would be entitled to depose them to discover the nature and extent of those problems, whether they are social difficulties, behavioral problems, disruption disorders, poor self-esteem, substance abuse, anxiety, depression. And if they had any of these problems, whether those problems could be related to a home environment, to living in multiple states and moving multiple times and attending numerous schools in different towns. Counsel referred to one of the children, but didn't tell you that there was a bitter divorce in the family and that he had attended seven different schools in four different states in the last ten years. Obviously, we're entitled to go into that to determine if they're claiming that there are problems as a result of molestation, what the background and what their lives are like today. The trial court did not abuse its discretion in not forcing us to go straight to trial without allowing us to explore the minor plaintiff's knowledge of the underlying facts on the severity, nature, and frequency of any alleged contact and their long-term effects, if any. Those issues are appropriate areas for pre-trial discovery. Now, plaintiffs say that they have no information that we could not have obtained elsewhere. Well, first of all, we don't have to take counsel's representations as to that. And I don't know of any case that says that we would have to make that showing before we would be entitled to the deposition of a party plaintiff. But there's a lot less to the mother's testimony than counsel told you. Three of the four mothers never spoke to their children about the facts surrounding the molestation. Three out of four didn't have that conversation. And as far as any current problems are concerned, the mother's depositions shed very little light as to their children at present and what problems they might be having. And the only mother who did speak to her child, Jane Doe No. 2, of course her daughter denied that there was any contact. Even plaintiff's primary therapist, Laurie Loves, I think you may see some deposition testimony from her in the record, she had no way of telling whether or not the children had been assaulted once, 10 times, 20 times, or as David Henry said on one occasion, hundreds of times. Now, counsel has referred to Supreme Court Rule 201C and the requirement of whether or not justice required that the depositions be taken or borrowed. This is in relation to a protective order that could have been sought, but plaintiff never sought a protective order in this case. Plaintiff never sought to put any limitation or restriction on the depositions. Plaintiff made a strategic decision in this case. He faults us for saying, well, he didn't like the way the motion of compel was framed. He was the one who made a strategic decision in this case to take an unyielding position of an absolute right not to submit the children to a deposition on any question. Rule 201C was never brought before the trial judge. Precisely. Precisely. They're talking about 201C today. They never made that argument in front of the trial judge. So if there's any waiver in this case, and I know Justice Carter that you had asked about a waiver to opposing counsel before, the only waiver that's applicable here is that he has waived any right to talk about what justice required under Rule 201C because he never put that in front of the trial judge. He was the one who made the decision in this case to absolutely refuse to not produce his clients for any question, even as to how they're doing today in school. This was the choice of his own making. We have heard some argument today and also in the briefs about the clinical psychologist, Renee Dominguez, and her expert testimony. Okay. First of all, we've cited cases. You can find them on pages 22 and 23 of our brief. They make it clear that civil defendants have a right to conduct discovery depositions of minors who have been abused or who have been otherwise traumatized and that the only circumstance when you can prevent the deposition from taking place is when the deposition would pose a direct threat to human life. Well, if we can agree on one thing in this case, we should be able to agree that we don't have that circumstance here. Plaintiffs are wrong to argue that the trial court ignored the impact that a deposition might have on minors. They are all 15 or 16 years of age now. The trial court did not ignore the testimony. In fact, the trial judge referenced at one point that he had reviewed the interview of Jane Doe No. 2 that had taken place and the fact that she had been texting during the interview. And as Dominguez herself acknowledged, Jane Doe No. 2 would be the first one to be deposed, is functioning within normal limits for, at the time she was a 14-year-old adolescent. Now she's 15 years old. And any concerns that were expressed were concerns that are general. They were not specific to her. They were not specific to any of the children. And certainly, again, she didn't say that there was anything that would be life-threatening. The record shows that the trial judge was sensitive to the unusual circumstances and was ready to become involved if necessary. This court simply can't assume the defense counsel will act improperly during the deposition and there are safeguards, protective orders that could be sought if there was any possible impropriety that could take place. Counselor, you have two minutes. Filing plaintiffs argue that the trial court should have conducted a hearing on their quote, unavailably closed quote under Section H.H. 201 before ordering the depositions to proceed. That statute simply does not apply here. It concerns the admissibility of out-of-court statements at trial, not the discoverability of statements, as I think Justice Carter pointed out, that no case has ever said that 8-2601 should be used to bar or in any way limit discovery in a civil case. That statute is essentially a limited statutory exception to the hearsay rule. And when we cited the statute, it was only to show that the cutoff used in terms of the age was 13 and that all the children now are above the age of 13. And finally, by its terms, the statute certainly would not apply to damage issues as far as how the kids are doing now in school. The court should respectfully decline plaintiff's invitation to engage in the analysis required under the statute. To conclude by way of summary, the depositions are relevant on a number of issues. A party's right to take a discovery deposition of another party is a basic and fundamental right. We ask you to affirm for all the reasons set forth in our brief. Thank you. Thank you, Counselor. Counselor. Mr. Chief Justice of the Court, since I only have three minutes, I will be brief. First of all, the reason this case, why I didn't ask for the depositions for a period of years is because the coverage issue wasn't decided until July 10, 2007. The key issue is why do I want the deaths? Well, Justice McDade kind of raised the question. He talked about the three plaintiffs. The fourth minor plaintiff, she or he, his mother, as soon as she found out about the problem, she took him to a doctor. There was no evidence of any abuse of any kind. Yet plaintiff wants to contend that these people over a period of months were molested 100 times. I am not convinced that these, in fact, all these accidents occurred. Just because David Henry has admitted to it, I'm not necessarily convinced they occurred. That's why I want to have the depositions. Because the four minors want to talk to, give different statements. John Daltry was interviewed by two Oglesby Police juvenile officers who are skilled, by a DCFS officer and a mother. And to each one of those people, he said he was choked, which is totally inconsistent with David Henry's statement. If you're going to rely on Dr. Dominguez, Dr. Dominguez in her report said the most important report you get is the first investigation by a professional. That was the first investigation. So what I'm trying to get at is I'm not sure these actually occurred. They may have witnessed it, but to what degree? I don't know. We have two settled plaintiffs who they may have witnessed. I don't know. But I need to find that out. And the other point is, did they think this was plain doctor? Were there any repercussions? And also, I do, you know, if this goes back to Henry Mann, I will be representing Kathy Henry. In the complaint, there is one count for each plaintiff. And it says from July to December 2, 2000, they were molested. How do I prevent, provide any defense to her with not knowing a time, a place, or a location? DCFS was called in because two of the mothers, John No. 1 and John No. 3, called into DCFS and said that David Henry was a caregiver, that he babysat. Now, I need to know when, where, and what that occurred because that provides me with an analyte defense. How do I get that without taking the depositions? Mr. Quartz said there's crime. You're assuming that these 4- and 5-year-old kids are going to remember 10 years later? I don't know. What dates? No, no. And we, I'm the only one in this room here that's been in from the beginning to the end. There's been multiple motions to dismiss. But I need to know how many times they went over to the other people's houses to babysit. No, you're right. They're not going to get times and places. But they may not even recall this occurred. And that goes to the issue you brought up about damages. That's relevant. I mean, I need to know when they lost, saw treatment. And it also goes to the issue of proximate cause. These kids, some of them have problems, but whether this is the proximate cause is a tremendous issue. There are things that are not in this record, which is very limited, that suggest that is in fact the case. Counselor. I'm sorry. Okay. Well, unless you have questions, I would simply ask that you affirm the trial court and allow the depositions to go forward. Thank you. Thank you, counsel. Counsel, you may proceed. Justice, there's just a few comments on statements made in response. First, pages 22 and 23 include four out of five cases that Mr. Reese has cited, at least two of which are trial court cases from Texas and New York, and then a couple more from Massachusetts. There is one case that he cited from Illinois, and that's the Peoria case involving, the name of it is Bush, and involved a Catholic church. That was a distinguishable case because these were adult witnesses 20-some years after the events occurred. As for this all or nothing, the motion was brought all or nothing. There was great discussion, as was cited in the briefs and is included in the discussion of what the trial court was considering, about striking a balance between the minor's emotional state versus the defendant's right to take the deposition. There is no chance that Rule 201 does not govern the situation. I believe 2601 absolutely must govern. The purpose of 2601 was to exclude minors from the process so that the prosecution could still go forward as long as certain safeguards were met. Did you bring a 201C motion before the trial judge? I did not. There was discussion during the hearings about whether or not the judge was going to oversee, which absolutely must fall under 201C. 201C2, the judge said, well, perhaps I can be available for phone calls if you guys want to talk about it. I said, be at the courthouse. If you have the deposition at the courthouse, I'll be here. You can call me at any time. Right. And that was, as I said, invoked by 201C. It has to be under 201C. There's no other discretion, that kind of discretion, allowed otherwise under 183. But the discretion is allowed under 201C for supervision or 201C1, which is some sort of limitation. All he was saying was that he would be available at the courthouse if questions arose. Right. That's not something that he requires authorization for, is it? No, he has the discretion to do that on his own, to make himself available. Absolutely. So how does that require a construction of 201C? 201C is what is supervision or 201C2 is supervision of discovery, which include oral discovery. 201C1 allows some sort of limitations thereof. But absolutely, the trial judge has discretion to make himself available as he volunteered. Thank you. The outlook of this case changed greatly on July 17th of 2007. I'm sorry, July 10th of 2007, when this court entered an order saying that State Farm had a duty to indemnify, to defend and indemnify both David and Kathy Henry. This is a policy that has $100,000 per occurrence with no limit, and that was the day. That was the beginning of, and as the trial attorney for the plaintiffs in this case, we had every issue, including the ones before this court today, has centered on trying to undo David Henry's admissions, which I believe admission law does not allow, and thus makes the relevancy point of their argument moved. You're suggesting that no matter what the children say or what the mothers say, what he admitted to is irrebuttable? I believe so, yes, absolutely. When it comes to him saying something, a concrete fact within his knowledge, that is a judicial admission which may not be proved otherwise at trial, he is absolutely married to that, and whether or not they believe Kathy Henry's married to it, I suppose that's a different issue, but absolutely defendants have had the same counsel throughout this entire case. They've had the same defense throughout this entire case, and David admission law is quite clear. He is not going to be allowed at the trial to try to prove through other witnesses that what he says occurred didn't occur. Counsel, you're fine there. Thank you. We stated in our brief and not lightly that the mothers were presented with a Sophie's choice. Sophie's choice was an unimaginable decision forced upon a mother regarding the well-being of her children. In this case, we have four mothers who have been presented with the option of either giving up their children's rights and dismissing the case or subjecting their children to what has been determined as re-traumatization and severe emotional harm by the unopposed expert evidence in this case. I believe that choice is unjust and unfair. I think Illinois allows and insists on the protection of these kids, and, of course, we ask that two orders be reversed requiring that children be deposed and dedicate the contempt finding and the fine of this by myself and the four mothers. Thank you, counsel. The court will take this matter under advisement, and we'll dispatch, and we'll take an adjournment for the presentation of the next panel.